NATIONAL SURETY COMPANY, A Corporation,

*vs.*

WILLIAM WALLACE LANAHAN AND HENRY LAY
DUER, Co-Partners, trading as
W. W. Lanahan & Company.

*Surety companies: charter powers; guaranteeing performance
of contracts; includes guarantee of payment of notes.*

Where the charter of a surety company empowers it to issue
bonds "guaranteeing the performance of contracts, other than
insurance contracts," it has authority to guarantee the payment
of promissory notes.                                    p. 545

While special authority must be conferred upon a corporation
before it can become a surety on a bond, yet no narrower mean-
ing is to be attached to words covering a grant of power in a
charter than the words used necessarily imply.         p. 545

*Decided January 9th, 1917.*

Appeal from the Superior Court of Baltimore City.
(Duffy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Henry W. Williams,* for the appellant.

*Frank Gosnell* and *George Weems Williams* (with whom was *William L. Marbury* on the brief), for the appellees.

Constable, J., delivered the opinion of the Court.

This appeal is from a judgment recovered upon a bond, executed by the appellant, as surety for one Alexander Cuningham, principal therein.

It appears from the record that Cuningham approached the appellees, private bankers and brokers of Baltimore, for the purpose of securing a loan of seventy thousand dollars. Cuningham was a coal-mine operator in the State of West Virginia, and owned all of the outstanding stock of a mining corporation of that State, all of which, however, he had pledged with certain New York banks as collateral for large loans, and which he was desirous of paying off. Accordingly, he and the appellees entered into a written agreement, whereby the appellees were to loan him the sum of seventy thousand dollars upon his promissory note, but it was made a condition precedent to the loan that the payment of the note, according to its tenor, should be guaranteed by the National Surety Company of New York. The agreement provided for acquiring, through the proceeds of the loan, the stock pledged with the banks, and contained an option to the appellees in lieu of a cash repayment, which option, however, was not exercised. Before the Surety Company would execute the bond, it required that the stock about to be released by the banks should be repledged with it, together with other securities of Cuningham's, including a mortgage on his residence, in order to indemnify it against loss.

Accordingly, a note for seventy thousand dollars, payable one year after date, was given by Cuningham to the appellees; and the appellant did make, execute and deliver to the appellees the bond guaranteeing the payment of the said note, at maturity.

On the day after the note was due, the appellees notified the appellant that Cuningham had failed to pay the note, and, therefore, they called upon it, under the bond, to pay them the amount due. On that same day, Cuningham wrote the appellant that he had not paid the note, and intended to deny liability upon the same, and notified it not to pay it and not to sell or otherwise dispose of the securities deposited with it. A few days later the attorney of Cuningham wrote the appellant, giving in more detail the defense to be urged by Cuningham to any suit to be brought by the appellees to enforce payment either from him or the appellant, and arranging that in the event suit should be brought against the appellant, the attorneys for the appellant should defend the suit, but at the cost and expense of Cuningham. The appellant then wrote its Baltimore attorneys: "I have your letter of the 10th inst., and as much as we desire to do so, Mr. Cuningham's position in the matter precludes us at this time from recognizing Lanahan & Co.'s request for payment of Mr. Cuningham's promissory note. * * * You may make known to Mr. Lanahan's attorneys as much of the letter as you deem wise, but I know you will appreciate that in the light of the two communications, photostat copies of which you will have upon receipt of the enclosure, it would be most unwise for us to take any step in defiance of Mr. Cuningham's instructions."

In the suit subsequently brought against the appellant, judgment was recovered for the full amount claimed, and this appeal taken therefrom. In the Court below there was the defense of fraud as well as that of *ultra vires,* but the issue of fraud has been withdrawn by the appellant, and the only question before us is whether or not the bond sued upon is *ultra vires.*

In our opinion, the charter provisions of the appellant render unnecessary a discussion of several legal propositions which might arise under the facts as disclosed in this record, for it must be conceded, if the power to guarantee the payment of promissory notes can be found in the charter the obligation sued on is not *ultra vires.*

The appellees offered in evidence a certified copy of the copy of the appellant's amended charter as filed in the office of the Secretary of State as of the year 1912. The counsel for the appellant stated in open Court that that copy was the latest one as of file in the office of the Secretary of State. The appellant offered in evidence a certified copy of its charter as amended May 11th, 1914, and effective until June 21st, 1915, which amended charter was the one in effect at the time of the execution of the bond in question, June 20th, 1914, but which had never been filed in this State with the Secretary of State. The similarity between the sections in the two amended charters, affecting the question of this bond, is so marked that the difference is not appreciable.

By Section 4 of Article 3 of the Amended Charter, filed in 1912, power is conferred upon the appellant to issue bonds, "Guaranteeing the performance of contracts other than insurance contracts where surety bonds are accepted by States or Municipalities in lieu of actual deposits." By Section 4 of Article 3 of the amended charter, as of date the 11th day of May, 1914, the appellant is empowered to issue bonds, "Guaranteeing the performance of contracts other than insurance policies; guaranteeing the performance of insurance contracts where surety bonds are accepted by states and municipalities."

While it is admitted by the appellant that it had power to guarantee contracts, and that the word "contract" includes promissory note, nevertheless, the argument is that in construing the power given to it by the use of the word "contract," one is not to take that word in its broad legal sense, but is confined to a narrower meaning. That is, that unless

the charter contains express words giving power to guarantee promissory notes, or other obligations, purely and simply for the payment of money, that then the power can not be read into the charter by simply expressing the power as one to guarantee contracts generally. The contention then, as applied to this particular case, is that as the charter of the appellant did not expressly provide for the guaranteeing of the payment of promissory notes, that the fact that it did provide for the guaranteeing of all contracts other than insurance policies, did not confer the power upon it of guarteeing promissory notes.

We have been referred to no authorities, nor have we been able to discover any, to that effect. While it is true that special authority must be conferred, by its charter, before any corporation can become the surety on any bond, yet we know of no rule of law, nor any reason for such, that would require a narrower meaning to be attached to words covering a grant of power in a charter than the words used necessarily imply, provided, of course, that the power assumed to be exercised is a lawful one.

The very nature of the business for which the appellant was chartered is that of becoming surety for a great variety of classes of suretyship, and the character of suretyship herein claimed is neither unlawful nor against public policy. The fact that the charters of some of the local surety companies, issuing bonds of the character of this one, contain the power expressed in different language than that used in the charter of the appellant, can make no difference in the conclusion reached by us. That the framers of those charters preferred to express their powers by language more in detail certainly can not be used to take away from language just as comprehensive, although more concise. We are of opinion, therefore, that the charter provision referred to conferred full authority upon the appellant to issue the bond sued upon.

There was a question raised in the pleadings which, however, is rendered immaterial by the conclusion we have

reached on the only question attempted to be raised, that of *ultra vires*. The appellant for a plea set out all of the provisions as contained in its amended charter of May 11th, 1914, previously referred to, and alleged that it had not then, nor at the time of the execution of the bond sued upon, any other powers. This plea undoubtedly was for the purpose of raising the issue of *ultra vires*. There was also filed a general plea of *ultra vires*. The appellees traversed these pleas and issue was joined. The appellees were proceeding upon the theory that the amended charter filed with the Secretary of State was broader in its powers than the one contained in the plea, and thus raised an issue of fact by its traverse, rather than an issue of law, as claimed by the appellant should have been done by filing a demurrer. The charter filed in the Secretary of State's office, upon which the appellees were entitled to rely, was certainly different from the one the appellant had neglected to file, and under which, we have held, the appellant was empowered to execute bonds of the character of the one in this case. We see no good purpose in discussing their differences, for the single question attempted to be determined was properly raised in the subsequent plea and adjudged against the contention of the appellant.

We will, therefore, affirm the judgment.

*Judgment affirmed, with costs to the appellees.*